IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02569-RBJ

RAYMOND V. ARCHULETA,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

ORDER

---

This matter is before the Court on review of the Commissioner's decision denying claimant Raymond Archuleta's application for Social Security disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision.

**I. Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*,

851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## II. Background

Mr. Archuleta, who was born on July 26, 1965 lives in Colorado Springs, Colorado. He has previously worked as a warehouse worker and construction worker, but he has not worked since his alleged onset date of March 16, 2011.

### A. Procedural History

In April of 2011, Mr. Archuleta filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging disability due to severe back and shoulder pain beginning on March 16, 2011. The claim was initially denied on August 26, 2011. The claimant then filed a request for a hearing, and two hearings were held in front of Administrative Law Judge Kathryn D. Burgchardt, one on June 19, 2012 and the other on October 17, 2012. The ALJ issued a decision denying the claimant's request for benefits on October 26, 2012. The Commission denied his request for review on July 18, 2014, and Mr. Archuleta filed a timely appeal in this Court.

### B. The ALJ's Decision

The ALJ issued an unfavorable opinion after evaluating all of the evidence according to the Social Security Administration's standard five-step process. At step one, she found that Mr. Archuleta had not engaged in substantial gainful activity since his alleged onset date of March 16, 2011. R. at 21. Next, at step two, the ALJ found that the claimant had the following severe

impairments: degenerative disc and joint disease of the lumbar spine, status-post right shoulder surgery, and a pain disorder. R. at 21. At step three, the ALJ concluded that Mr. Archuleta did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 21. She then found that the claimant had the residual functional capacity ("RFC") to perform light work, "except that he should never climb ladders, ropes or scaffolds and should avoid unprotected heights and operating machinery; he should occasionally stoop; he should reach overhead frequently with the right extremity; the work should be unskilled (SVP of 1 or 2); and he should have occasional direct contact with the general public." R. at 22. Turning to step four, the ALJ found that Mr. Archuleta was not capable of performing any past relevant work. R. at 27. Finally, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that the claimant could perform. R. at 27. She thus concluded that he had not been under a disability. R. at 28.

### III. Discussion

The claimant contends that the Commissioner made the following errors in denying benefits: (1) the Appeals Council failed to consider new and material evidence presented by the claimant, (2) the ALJ failed to properly analyze Mr. Archuleta's mental impairments at step two, (3) at step three, the ALJ did not properly consider the claimant's spine impairment, (4) the ALJ's RFC determination is not supported by substantial evidence, and (5) the ALJ's findings at step five are not supported by substantial evidence. The Court will address each in turn.

#### A. Additional Evidence

The claimant first argues that the ALJ's decision should be remanded to the Appeals

Council under the sixth sentence of 42 U.S.C. § 405(g) because the council declined to consider new and material evidence presented by the claimant. *See* 42 U.S.C. § 405(g) ("The court . . . may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."). The Tenth Circuit "[has] joined the majority of circuits in holding, pursuant to 20 C.F.R. §404.970(b), that . . . the Appeals Council [must] consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (internal quotations, citations, and alterations omitted). In the present case, the Appeals Council declined to consider the additional evidence at issue because it concluded that the evidence was "new information about a later time" that "[did] not affect the decision about whether [the claimant] was disabled beginning on or before October 26, 2012," the date of the ALJ's decision. R. at 2.

The Court agrees with the Appeals Council's assessment. All of the evidence at issue postdates the ALJ's decision, and the vast majority does not relate back to the time period between Mr. Archuleta's alleged onset date and the date of the decision. Indeed, the additional records are nothing more than treatment records for the time period after the ALJ issued her decision. *See generally* ECF Nos. 13-1, 13-2, 13-3, 13-4, 13-5, 13-6, 13-7. The only information in these records that even arguably relates back to the period at issue is the following: a statement that Mr. Archuleta suffers from "longstanding lumbar back pain," ECF No. 13-1 at 7; a note that he has experienced "lower back pain, bilateral posterior leg pain since 2003" and was "previously getting back injections in 2003," *id.* at 16; notes made at various

4

times in late 2012 and throughout 2013 that the claimant has experienced back pain for the past 10 to 12 years, ECF Nos. 13-3 at 9, 28, 34; 13-6 at 4; 13-7 at 3; and a comment that trauma related to his back pain occurred at work on May 5, 2012, ECF No. 13-7 at 37. None of this is new information that is not already contained elsewhere in the record, nor does it appear to be material, given the ALJ's step two finding that the claimant suffers from degenerative disc and joint disease of the lumbar spine, status-post right shoulder surgery, and a pain disorder, R. at 21. In sum, none of the additional evidence presented to the Appeals Council was new, material, and related to the relevant time.[1] The Appeals Council was therefore not required to consider it, and I decline to remand the decision on this basis.

### B. Mental Impairments at Step Two

The claimant next argues that the ALJ "failed to follow the proper procedure for analyzing Mr. Archuleta's mental impairments at step two as required by 20 C.F.R. §§ 404.1520a and 416.920a" and, as result, she did not properly consider whether the claimant's depression and anxiety were severe impairments. ECF No. 13 at 8. However, as the government points out, "any error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). Thus the Court considers the claimant's challenge to the ALJ's analysis of his mental impairments in the context of the RFC discussion below.

---

[1] In fact, it is not even clear that the claimant argues as much. His brief states that the additional evidence "shows that [his] impairments did not improve after the date of the unfavorable decision and that his impairments lasted and continued to last for at least twelve months in a row." ECF No. 13 at 7. Whether his condition improved or not after the date of the decision, however, is immaterial to whether the ALJ's decision about the relevant time period was supported by substantial evidence.

### C. The ALJ's Step Three Analysis

Turning to step three, Mr. Archuleta contends that the ALJ failed to properly evaluate his spine impairments in reaching the conclusion that he did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  R. at 21.  The claimant asserts that the medical evidence in the record "clearly support[s]" a finding that his spine impairment meets or medically equals Listing 1.04 A., Disorders of the Spine, and cites numerous medical records in support of this contention.  ECF No. 13 at 15–22.  However, "remand for a more thorough discussion of the listings [is unnecessary] when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) (finding any error at step three harmless because the ALJ's step four and five findings made clear that claimant's impairments did not meet or medically equally a listing).

Here, as in *Fischer-Ross*, the ALJ's later analysis makes remand for any error at step three unnecessary.  In assessing the claimant's RFC, the ALJ found that, taking into account Mr. Archuleta's lumbar degenerative disc and joint disease, he could perform light work that involves occasional stooping (a conclusion that the Court finds is supported by substantial evidence, as discussed below).  R. at 26.  As the ALJ noted, the ability to perform light work includes the abilities to lift 20 pounds at a time, frequently lift and carry objects weighing up to

---

[2] The claimant's reply brief brings up alleged errors in the ALJ's evaluation of Mr. Archuleta's mental impairments at step three.  However, his opening brief discusses only his spine impairments in the section addressing this step.  In any event, the Court similarly finds that any step three error the ALJ made in failing to further evaluate the claimant's mental impairments was rendered harmless by the ALJ's later RFC analysis.

10 pounds, and stand and walk "a good deal."  R. at 26.  The ALJ's finding that the claimant has such abilities is incompatible with the range of limitations required under Listing 1.04 A: "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and . . . positive straight-leg raising test (sitting and supine)."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Indeed, as the circuit has noted, "the purpose of the listings is to identify impairments severe enough to prevent a person from doing any gainful activity . . . [When] the ALJ's findings . . . allow [a claimant] to perform a wide range of gainful activities, [they] do not approach the level of severity required to render [the claimant] presumptively disabled."  *Fischer-Ross*, 431 F.3d at 734–35 (internal citations and quotations omitted).  Accordingly, in light of the findings in the ALJ's RFC analysis, the Court finds that any failure on the ALJ's part to further consider Medical Listing 1.04 A was harmless, and I decline to remand the decision on the basis of any step three error.

### D.  The RFC Determination

Next, Mr. Archuleta contends that the ALJ's RFC finding is not supported by substantial evidence for three reasons: (1) her evaluation of the evidence related to his mental impairments was deficient, (2) she did not properly evaluate the evidence of his physical impairments, and (3) her analysis of Mr. Archuleta's credibility is flawed.  The Court will address each in turn.

#### 1.  Mental Impairments

Beginning with the claimant's mental impairments, the ALJ found that she had "no basis to conclude that [Mr. Archuleta] is incapable of performing the basic mental functional capacities of understanding, remembering and carrying out instructions, making judgments,

responding appropriately to supervisors, coworkers, and usual work situations, and dealing with changes in work settings." R. at 25.  In support of this finding, the ALJ noted that complaints of depression and anxiety are not prominent in the claimant's primary care records, he had not sought counseling services, and his reported daily activities suggest that he could perform a full range of activities without psychological interference.  R. at 24.  Moreover, a consultative examiner assigned the claimant a GAF score of 60, representing only a mild to moderate range of limitations.  R. at 24.  Based on this evidence, the Court is satisfied that the ALJ's finding that Mr. Archuleta's claimed depression and anxiety did not affect his RFC was supported by substantial evidence, and, as explained below, I am not convinced by any of the claimant's arguments to the contrary.

In challenging the ALJ's finding, the claimant first argues that she wrongly concluded that he had been prescribed Xanax primarily for muscle spasms, when in fact it was prescribed primarily to treat his anxiety, and that she ignored the fact that he was prescribed two medications for depression.  ECF No. 13 at 24.  However, the ALJ's opinion acknowledges that Mr. Archuleta "also uses [Xanax] for anxiety," R. at 24, and there is substantial evidence in the record suggesting that it was prescribed primarily for muscle spasms.  *See* R. at 103 ("Although there is a prescribed anxiolytic, it was reported by the claimant . . . for muscle spasms."); R. at 577, 608 (listing Xanax as medication for "severe muscle spasms").  *See also Wall*, 561 F.3d at 1052 (substantial evidence requires "more than a scintilla, but less than a preponderance").  Moreover, although the claimant is correct in asserting that the ALJ did not mention the two other medications that he was prescribed for depression, the ALJ cited his full range of daily activities and lack of significant medical history of mental health issues in support of her

findings, and her overall conclusion is therefore supported by substantial evidence. In sum, I am not persuaded by the claimant's first argument.

Mr. Archuleta also challenges the weight the ALJ assigned to the opinion of Dr. DeAngelo, who completed a consultative psychological evaluation of the claimant. The ALJ afforded the doctor's conclusions "partial weight" and accepted her finding that the claimant "would have greater difficulties performing more complex tasks." R. at 25. Mr. Archuleta argues that the ALJ failed to explain why she did not accept the portion of the doctor's opinion finding limitations in his ability to "sustain concentration and persist in completing routine daily and work-related tasks at an adequate pace." R. at 420. The ALJ's analysis does not make clear whether she considered this portion of the opinion, although it may have informed her conclusion that the claimant would have greater difficulties in performing more complex tasks. *See* R. at 25. In any event, it is not clear that affording any additional consideration to this portion of Dr. DeAngelo's opinion would have led the ALJ to make a different RFC determination. For unrelated reasons—namely the side effects of Mr. Archuleta's medications— the ALJ limited him to unskilled work with a svp of 1 or 2. R. at 26. The Tenth Circuit has held that the inability to concentrate can be accommodated by a limitation to work with a svp of 2. *Wendelin v. Astrue*, 366 F. App'x 899, 904 (10th Cir. 2010) ("But the ALJ did take into account a limitation on concentration by confirming with the VE that all of the jobs she identified had a specific vocational preparation ("SVP") of two, which . . . is 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time,' 20 C.F.R. § 404.1568(a)."). The Court therefore finds that further consideration of the portion of Dr. Angelo's opinion not explicitly addressed by the ALJ would not have affected her RFC finding,

and accordingly any error in failing to further discuss the opinion was harmless.

Lastly, the claimant contends that the ALJ's analysis of the opinion of Dr. Brill, a State agency psychologist who reviewed Mr. Archuleta's file, is flawed because (1) her RFC determination does not reflect the findings from the doctor's opinion that she did accept and (2) she improperly rejected other parts of the opinion. As for the first point, the claimant's brief misstates the ALJ's conclusion. The ALJ accepted Dr. Brill's opinion that Mr. Archuleta should be limited to unskilled work (or, in the doctor's words, "simple basic work"), R. at 26, 104; there is no indication in the ALJ's opinion that this was also an implicit acceptance of Dr. Brill's conclusion that the claimant had moderate limitations in concentration, persistence, and pace, as Mr. Archuleta argues it was.[3]  *See* ECF No. 13 at 25. Thus the Court is not persuaded by this argument.

Turning to the second point, the ALJ rejected Dr. Brill's conclusion that the claimant should be limited to work in a nonpublic setting because it was inconsistent with Dr. Angelo's assessment that Mr. Archuleta was only mildly restricted in this area, and Dr. Angelo actually interviewed the claimant. R. at 26. This was a proper consideration under the relevant regulations, *see* 20 C.F.R. §§ 404.1527 and 416.927, and the Court finds the ALJ's analysis unproblematic. In sum, the ALJ's finding that the claimant did not have any mental impairments that would interfere with his ability to perform basic work-related tasks was supported by

---

[3] Moreover, the Court notes that Dr. Brill apparently felt that all of the claimant's limitations could be accommodated by a limitation to "simple basic work in a nonpublic setting." *See* R. at 104. Thus any argument that the moderate limitations Dr. Brill noted in his opinion are not accounted for by a limitation to unskilled work is an attack on the doctor's opinion, not that of the ALJ.

substantial evidence.[4]

### 2. **Physical Impairments**

Next, the claimant argues that the ALJ improperly evaluated the medical evidence related to his physical impairments. Specifically, Mr. Archuleta's brief contends that the ALJ did not properly consider the opinion of Dr. Lopez, who served as the claimant's treating physician, or that of Ms. Phipps, who performed a consultative exam in June of 2012. As explained below, the Court finds that the ALJ properly evaluated Dr. Lopez's findings, but I agree with the claimant as to Ms. Phipps' report.

Beginning with Dr. Lopez's opinion, the ALJ was required to weigh the opinion as that of a treating source. In analyzing a treating physician's opinion, the ALJ must first determine whether it should be afforded controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). An opinion "must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* If the ALJ finds that an opinion is not entitled to controlling weight, she must go on to determine what weight to assign it. *Id.* At this second step of the analysis, the ALJ must "make clear how much weight the opinion is being given . . . and give good reasons . . . for the weight assigned." *Id.* The factors relevant to this determination include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the opinion is supported

---

[4] Additionally, none of the relevant points raised in the context of the claimant's argument about the ALJ's step two analysis—many of which parrot the arguments already addressed above, *see* ECF No. 13 at 9–14—convince the Court otherwise.

by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the relevant area; and (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion. *Id.* at 1131.

In the present case, Dr. Lopez opined that, based on his nearly two-year treatment relationship with the claimant and the results of a functional capacity exam, Mr. Archuleta could not lift more than 15 pounds, his range of motion at the waist was limited, he could not climb ladders, and he had a "limited work tolerance" of two to four hours. R. at 609. The ALJ found that the statement regarding the claimant's work tolerance addressed a matter reserved for the Commissioner and was therefore not entitled to controlling weight. This conclusion aligns with the applicable law, and the Court does not find it problematic. *See* SSR 95-6p at *2 ("What an individual's RFC is" constitutes an administrative finding reserved to the Commissioner, and a treating physician's opinion on such a matter is "never entitled to controlling weight or special significance.").

The ALJ went on to state that "[l]imited weight is given to Dr. Lopez's opinion, and only to the extent he believes the claimant should never climb ladders and is capable of lifting within the light exertional range, which is consistent with the results of a more recent FCE." R. at 25. She entirely rejected the portion of Dr. Lopez's opinion restricting the claimant to part-time work because it "appeared to be based upon subjective statements alone, as the claimant's symptoms have been managed quite conservatively and the ongoing clinical findings are not persuasive, showing variable lumbar movements and foot strength ratings, but no gait difficulties, loss of strength or neurological deficits." R. at 25. The claimant argues that, in reaching this conclusion, the ALJ improperly rejected the opinion "based upon [her] own speculative

12

conclusion that the report was based only on claimant's subjective complaints . . . [without a] legal [or] evidentiary basis" for doing so. *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004). However, the quoted language makes clear that the ALJ did have an evidentiary basis for the decision—namely, the history of conservative treatment and the lack of corroboration by other evidence in the record. These are proper considerations in determining what weight, if any, to afford an opinion, and I am therefore unpersuaded by the claimant's argument on this point.

The claimant's brief next launches into a discussion of other evidence in the record that he apparently believes undermines the ALJ's finding that the rejected portion of Dr. Lopez's opinion, which limited Mr. Archuleta to part-time work, "appeared to be based upon subjective statements alone." ECF No. 13 at 29–30. However, in light of the various records the ALJ cited in support of this finding, *see* R. at 25, the Court finds that it is supported by substantial evidence. *See Wall*, 561 F.3d at 1052 (substantial evidence requires "more than a scintilla, but less than a preponderance"). Moreover, the claimant's brief provides no real explanation for why the evidence he cites supports a limitation to part-time work. *See* ECF No. 13 at 29–30. In sum, I find the ALJ's analysis of Dr. Lopez's opinion unproblematic.

Turning to Ms. Phipps, the ALJ afforded "partial weight" to the FCE she performed in June of 2012. R. at 26. After considering which portions of the FCE findings were consistent with the record as a whole, the ALJ adopted the finding that Mr. Archuleta was limited to a light range of exertional activities, with no ladder climbing or balancing and occasional stooping; however, she rejected the remaining FCE findings that he was further limited to occasional walking, standing, sitting, climbing stairs, reaching above shoulder height, grasping, pushing, pulling, and using the head and neck and that he could not crawl, kneel, or perform manipulative

13

activities. R. at 26. In support of this decision, the ALJ cited evidence in the record documenting the claimant's ability to drive and perform a wide range of household tasks and noted the lack of any evidence reflecting problems with the left upper extremity, gross or fine manipulation, and gait. R. at 26.

The claimant argues that the ALJ's finding of a lack of evidence showing "left upper extremity issues" is flawed and points to a number of records documenting bilateral shoulder issues.[5] *See* R. at 330–31 (noting a "bilateral" shoulder problem involving limited internal and external rotation and limited abduction weakness); R. at 392, 462, 600 (listing "rotator cuff syndrome of shoulder" as an impairment). In fact, a review of the record reveals that some of the records cited by the ALJ note that the claimant has experienced problems with both shoulders. *See* R. at 578 (claimant had pain in his "shoulders"); R. at 604 (noting joint abnormality in both his "right shoulder" and "left shoulder"); R. at 607 (commenting that Mr. Archuleta has "bilat[eral] shoulder joint pain"); R. at 621 (listing "shoulder surgery bilat[eral]" in the claimant's medical history). Based on this evidence, the Court cannot find that the ALJ's conclusion that the record as a whole "show[s] no left upper extremity issues" is supported by substantial evidence. I therefore cannot conclude that the ALJ properly rejected the portion of Ms. Phipps' opinion limiting Mr. Archuleta to only "sometimes" reaching above shoulder height with both upper extremities, and the ALJ's opinion must be remanded on this basis.[6]

---

[5] The claimant also argues that "it is apparent from Ms. Phipps' report that she had observed Mr. Archuleta frequently dropping items with repetition on examination," and therefore the ALJ was wrong to reject the finding that he could not perform manipulative activities. ECF No. 13 at 31. However, the ALJ discounted Ms. Phipps' opinion because it was unsupported by the record as a whole; the claimant's point thus does nothing to undermine the ALJ's reasoning.

[6] Nor can I find that this error was harmless in light of the ALJ's step five findings. If the ALJ had found that Mr. Archuleta's use of his left shoulder was limited to only frequent overhead reaching, she might

### 3. **The Claimant's Credibility**

Mr. Archuleta additionally argues that the ALJ did not properly evaluate his credibility when considering his subjective complaints of pain. After considering the claimant's testimony, the ALJ concluded that she "[could not] find his complaints to be well supported by the evidence of record" because "his presentation and the clinical findings [did] not correlate with [the] degree of discomfort or debility [claimed by Mr. Archuleta]." R. at 26. Specifically, the ALJ cited "less than compelling clinical findings, his conservative treatment and lack of any type of mental health care, and the inconsistencies within the record" in support of her conclusion that Mr. Archuleta did not have limitations as significant as he claimed. R. at 26–27. The claimant takes issue with four specific points in the ALJ's discussion: her assessment of his daily activities, his failure to seek other medications, his use of medical marijuana, and his continued search for jobs involving manual labor. The Court will consider each in turn.

First, Mr. Archuleta argues that his daily activities "do not necessarily establish that he is capable of performing substantial gainful activity." ECF No. 13 at 33. The ALJ noted that he testified that he does his own grocery shopping and laundry, does dishes, cleans, waters and cuts the grass, cleans the yard, visits with family, drives, and walks for exercise (although his walking is limited due to pain). R. at 22–23. While the claimant is correct that "sporadic performance [of daily activities] does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987), the activities cited by the ALJ here are not sporadic. Rather, as the ALJ found, the totality of Mr. Archuleta's activity appears

---

have concluded that he could not perform the jobs listed at step five (Automobile Service Technician, Flagger, and Cleaner); it is not obvious that these jobs could be performed by someone who can reach overhead only frequently with both upper extremities.

to contradict his claims of disabling pain. Thus the Court does not take issue with the ALJ's reliance on this evidence in support of her finding that the claimant's complaints of pain were not fully credible.[7]

Second, the claimant's brief points to the ALJ's comment that Mr. Archuleta "testified to medication side effects, [but] does not seek drugs with more tolerable consequences," R. at 24, and argues that the ALJ "improperly assum[ed] without any foundation the existence of other drugs that Mr. Archuleta would tolerate better." ECF No. 13 at 33–34. However, the Court thinks it clear that the ALJ's point was only that he had not inquired about other potential treatment options, thus casting doubt on the severity of the side effects he experienced. *See* R. at 24. The Court finds this line of reasoning unproblematic.

Next, Mr. Archuleta contends that the ALJ improperly "found fault with" his use of medical marijuana. ECF No. 13 at 34. The ALJ commented that the claimant "chooses to use marijuana, in spite of signing a narcotics contract." R. at 24. She also pointed out that marijuana can increase anxiety symptoms and affect a person's short-term memory. R. at 24, 25. It is not clear that any of these comments bear on her analysis of the claimant's credibility; indeed, the Court is unsure why the ALJ mentioned the narcotics contract at all. In any event, the comments do not appear to figure prominently in the ALJ's assessment of the claimant's credibility, and the Court declines to remand the opinion on this basis.

Lastly, the ALJ noted that, despite the fact that two physicians had told the claimant that he could not continue to perform manual labor jobs in light of his injuries, Mr. Archuleta

---

[7] Although not particularly relevant to the analysis here, the Court agrees with the claimant that the ALJ's comment that his practice of smoking and drinking beer on a weekly basis are "decisions that do nothing to improve his employability," R. at 24, was inappropriate and not germane to the issues before her.

testified that he "continue[d] to seek labor-type work." R. at 24. The claimant argues that his previous attempts to work "should not be counted against him." ECF No. 13 at 34 (citing *Tyson v. Apfel*, 107 F. Supp. 2d 1267, 1270 (D. Colo. 2000) ("[claimant's] persistent attempts to work with her impairments serve[d] to bolster her credibility")). While the claimant is correct that a good work history generally reflects positively on a claimant's credibility, here the ALJ was making a more specific point—the fact that Mr. Archuleta continued to seek manual-labor jobs in particular undermines his claims about the degree of his pain. *See* R. at 24. This reasoning is sound, and the Court finds the ALJ's analysis on this point unproblematic.

In sum, the claimant's attempts to undermine the ALJ's credibility analysis are not persuasive. Nor does any of the additional evidence that the claimant briefly mentions in arguing that the record supports his claims to a greater extent than the ALJ allowed, *see* ECF No. 13 at 33, convince the Court that the ALJ's credibility determination was not supported by substantial evidence. I thus decline to remand the ALJ's opinion on the basis of any issue related to her assessment of Mr. Archuleta's credibility.

### E. The ALJ's Step Five Analysis

Lastly, the claimant argues that the ALJ's step five findings were not supported by substantial evidence. First, he contends that in light of the problems with the ALJ's RFC determination discussed above, the ALJ did not pose accurate questions about his limitations to the VE. If the ALJ revises her RFC assessment on remand, she will, of course, be required to take any additional impairment into account at step five.

Next, the claimant asserts that "it appears that two of the jobs [identified by the ALJ at step five] must be eliminated based on the specific limitations that the ALJ found that Mr.

Archuleta had." ECF No. 13 at 37. Specifically, the claimant points out that (1) the Automobile Service Technician job, D.O.T. 620.864-018, requires the worker to use a power hoist or jack, but the ALJ found that Mr. Archuleta could not operate machinery; and (2) the Flagger job, D.O.T. 372.667-022, requires the worker to make judgments about the movement of traffic through a construction site and be responsible for workers' safety, but the ALJ found that the claimant has reduced cognition due to the side effects of his medications. *Id.* Beginning with the second point, the only limitations the ALJ included in her RFC finding related to the claimant's reduced cognition were restrictions to unskilled work and work that involves only occasional direct contact with the general public. R. at 26. Mr. Archuleta has not challenged this finding, nor does he argue that the RFC itself is inconsistent with the requirements of the Flagger job. Thus the Court rejects the claimant's argument as to this job.

Turning to the Automobile Service Technician job, however, it does appear that the ALJ's RFC finding that the claimant should avoid operating machinery would preclude him from performing tasks required as part of this job. Although the ALJ relied on the VE's testimony in finding that Mr. Archuleta could perform the Automobile Service Technician job and, in any event, this error is likely harmless given the number of Cleaner jobs, she should consider the claimant's challenge to this finding on remand.

Lastly, the claimant briefly argues that there is no support in the record for the ALJ's finding that he can perform any of the jobs cited at step five in light of his "moderate limitations of ability to sustain concentration, persistence, and pace." ECF No. 13 at 38. This argument does not discuss the ALJ's RFC finding, which serves as the basis for determining which jobs the claimant can perform, and it is not developed to any real extent. The Court accordingly

rejects it.

In sum, I find that the ALJ's step five finding is supported by substantial evidence, but include the caveat that on remand the ALJ should more closely consider whether the Automobile Service Technician job would require the claimant to operate machinery to an extent incompatible with his RFC.

### IV. Conclusion

In sum, the ALJ erred in failing to properly weigh Ms. Phipps' opinion, and, on remand, she should take another look at the requirements of the Automobile Service Technician job. However, it is not clear that correction of these errors will necessarily change the ALJ's conclusion that benefits should be denied, and thus the Court declines to award benefits at this time.  *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).  Therefore, the decision of the Commissioner is REVERSED and REMANDED for further findings.

DATED this 18th day of August, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge